BERTHA BOOTON, Appellee, v. C. R. METCALFE, Appellant.

**ASSAULT AND BATTERY:**   Civil Liability—Self-defense—Admitted
1   **Aggression—Effect.**  Whether defendant employed excessive force
in repelling an assault upon him is the sole question at issue in a
civil action for damages *when plaintiff admits that he was the ag-
gressor* in the affray with defendant.  In other words, in such a
case neither the issue (1) whether the plaintiff was the aggressor,
or (2) whether the defendant had the right of self-defense, should
be submitted to the jury.  (See Book of Anno., Vol. 1, Sec. 12922.)

**ASSAULT AND BATTERY:**   Civil Liability—Self-defense—Permis-
2   sible **Degree of Force.**  The degree of force which a defendant may
*employ in order to prevent injury to himself* from an assault by
*one* person is not necessarily the measure of defendant's permissible
resistance when, at the same instant of time, he is menacingly
threatened by several other persons in his immediate presence.  This
important fact must not be overlooked by the instructions.

**Headnote 1:**   5 C. J. p. 691; 38 Cyc. p. 1617.   **Headnote 2:**   5 C. J.
pp. 636, 693.

*Appeal from Woodbury District Court.*—W. G. SEARS and A. O.
WAKEFIELD, Judges.

FEBRUARY 16, 1926.

ACTION at law for damages for personal injuries resulting
to the plaintiff from an assault and battery committed by the
defendant.  The battery consisted of the shooting of the plain-
tiff by the defendant, whereby great injury was inflicted upon
her.  The answer of the defendant justified the shooting as hav-
ing been done in self-defense.  There was a verdict and judg-
ment thereon for the plaintiff for $5,000.  The defendant ap-
peals.—*Reversed.*

*C. R. Metcalfe,* for appellant.

*Prichard & Prichard* and *Chris Jepson,* for appellee.

EVANS, J.—The event upon which this action is predicated
is the same as that for which the defendant was indicted and

convicted, and which came before us on appeal. See *State v. Metcalf,* 196 Iowa 281. The evidence in the case at bar and that in the criminal case are substantially identical. The statement of facts set forth in our opinion in the criminal case may properly be adopted as a statement of facts in this. It was as follows:

"The defendant is a resident of Sioux City, Iowa. At the time of the occurrence in question, he owned two adjacent lots or building sites, on each of which was a dwelling house. In an apartment in one of these houses, defendant and his wife made their home. This apartment fronted upon the street to the south. Other portions of the house were leased to tenants, among whom were the prosecuting witness and her family, occupying a room or rooms in the northwest part of the structure, and facing upon a porch and yard to the west. In the other building were other tenants, with one of whom lived a boy named Anderson. The defendant's wife complained that Anderson was noisy, profane, and impertinent. It is claimed by appellant that, upon his remonstrating with the boy, the latter became 'sassy,' thereby provoking the accused to strike him. This encounter took place on July 25, 1920, and, the boy having reported the alleged assault upon him, the husband of the complaining witness, with one Mansbridge, with whom Anderson lived, appears to have assumed the quarrel, and on the following morning, in the yard adjacent to the apartment occupied by defendant, accosted him with warnings and threats of punishment. The complaining witness, appearing on the scene, added her voice to the chorus of denunciation, whereupon defendant asked her why she was 'butting in,' and told her to get back to her own side of the house. She responded vigorously, taking up a stick, which she says was a scrub broom, or, as defendant says, a piece of two by four scantling, saying: 'You get around the house there, or I will land on you.' The evidence further tends to show that, about this time, both Mansbridge and Booton were also threatening the defendant. Booton was armed with a weapon which defendant says was an open knife, but which he, Booton, says was a pair of steel pliers, taken from a tool box. Appellant says of Booton and wife: 'They both came together. They both threatened to kill me.

She picked up a piece of two by four, about three feet long, and by the side of Booton, he with the knife, both started at me. I retreated three steps, and told them twice not to come at me with the stick and knife, and they kept coming. I was right in front of my front door, where I would have gone into the house, but Cary, another tenant, was standing there, and Mansbridge about ten feet east of me; and, the Bootons still coming, I drew my revolver and shot at them, and the ball struck her in the south side of her mouth, about six inches from Mr. Booton.' "

The plaintiff herself testified as follows:

" * * * The next morning I heard loud talking, and I jumped out of bed and ran to the door, and saw my husband and Metcalfe in the yard. They were fussing, and I asked, 'What is the matter?' and Metcalfe said he would beat up any kids he found on his place any time he took a notion. I said, 'If my kids needs any beating, I will give it to them myself.' Then I seen my husband was getting mad, and I thought he and Metcalfe would have trouble, and I went outside and said: 'See here, old man, you cut out that stuff. You can't pull that stuff with us; you can with some of the people, but we don't stand for it. You get around the house and shut up, or you will get into trouble. You get around the house and shut your mouth,—don't want any of that around my porch.' "

"Q. Did he go away then? A. Yes. I then steps up between my husband and him, as I was afraid he was going to hit him or something like that, and cause trouble; and he called me a terrible name, and I picked up the scrub broom, and he kept on swearing at me and kind of let my husband alone, and I said, 'You get around the house there, or I will land on you.' "

Cross-Examination.

" * * * I was not on my porch when shot. I had got down off the porch, and Metcalfe had gone further away. Q. And you *followed him up, and you said to him if he didn't get out of there, you would 'land on him?' A. Something like that.* When I came to the door, I said to him to beat it. I remember my husband saying he was going to hit him. I was standing at the door, and he was abusing him, and I was at the door, and he said—he was abusing me, too—my husband said some-

thing to the effect 'I will hit you if you say that again,' and I came out and stepped in between them.· Metcalfe started back then, away. He called me a name, and I picked the broom. Then Metcalfe started back, and I followed him to the spot where I was shot. *I suppose I would have hit him with it. I followed Metcalfe with the broom.* Q. Was it not this stick you picked up, instead of the broom? A. It would look like hard luck for a person to try to scrub with that. Q. Wasn't there a number of these two by fours that you used to prop tomato vines with,—this is one of them [attorney holding up the stick],—that *you picked up instead of the broom? A. Probably it was.* My husband was standing some place in the yard when I was shot,—I don't know where. He was quarreling with Metcalfe, and said he was going to hit Metcalfe, and I came in between them, so he would not hit him.''

It is made to appear also without dispute in the record that, at the time the plaintiff cast herself into the fray, three men were engaged with hostile words and threatening attitude toward the defendant. These were Mansbridge, the foster father of the boy Anderson, and Booton, her husband, and Cary, her brother. It is shown that these men were strong men, from 35 to 40 years of age, each weighing about 200 pounds. The physical prowess of the defendant is not described in the record, other than that he was 62 years of age. · That the defendant had reasonable cause to apprehend imminent punishment from one or more of these three men, is without dispute in the record. Booton had a weapon in his hand, which the plaintiff claims was an open knife, and Booton claims was a pair of pliers. The defendant had retreated to his front door; Cary stood between him and such front door; Booton was advancing upon him with threats; the plaintiff interposed herself between her husband and the defendant, and chose to make the assault herself. The weapon in her hand, as the defendant claims, was a two by four scantling. The plaintiff claimed in direct examination that it was a broom handle, but admitted on cross-examination that it probably was a scantling. The shooting was admitted by the defendant. He claims to have directed his shooting at the husband, who was close to the wife and ad-

vancing upon him. The bullet, however, struck the plaintiff
and inflicted serious injury.

The serious question confronting us in the case is whether
the question of self-defense was properly submitted to the jury,
and we proceed to the consideration of that question.

The court instructed in the first instance, in Instruction
6, that the burden was upon the plaintiff to prove that the as-
sault upon her was not made in self-defense. In Instruction 7,
1. ASSAULT AND       however, it laid the burden of proving self-
BATTERY: civil       defense upon the defendant. These two instruc-
liability: self-
defense: ad-         tions were therefore contradictory, and we have
mitted aggres-
sion: effect.        no occasion to determine which stated the proper
rule. No account was taken in the instructions of the admission
of the plaintiff, as a witness, that she was the aggressor in her
altercation with the defendant. The instruction required the
defendant to *prove* that she was the aggressor, and that he was
acting in self-defense, and impliedly permitted the jury to find
to the contrary. The instruction was not applied concretely to
the undisputed facts of the case. It was submitted in general
terms, precisely as though it were a question in dispute, whether
the plaintiff was the aggressor, and whether the defendant was
confronted with a situation which gave him any right of self-
defense at all. That the admitted aggression of the plaintiff
did give to the defendant a right of self-defense thereto is with-
out doubt, and it should have been so stated in the instruction.
The only jury question as to the subject of justification was
whether the force used by the defendant in his attempted self-
defense was excessive, within the meaning of the law. This
question should have been singled out and concretely submitted
by the court in the light of the undisputed facts. Nor was the
degree of force which the defendant could lawfully have used,
2. ASSAULT AND       necessarily measured by that which would be
BATTERY: civil       sufficient to repel the plaintiff herself. Though
liability: self-
defense: permis-     it were found that the defendant could have
sible degree of
force.               protected himself against the plaintiff by merely
grappling her, yet this would not necessarily have insured his
safety. It would avail nothing as against the threatened hos-
tility of the men. On the contrary, it could have furnished the
husband the ready excuse for the battery which he was threat-

ening. These undisputed facts were of the highest importance in the just ·determination of the case, and they should not have been ignored in the instructions.

We do not· overlook the fact that defendant's possession of a loaded revolver was a repelling circumstance against him. As against this, it appears in evidence that the three above named men, on the night before, had knocked at the defendant's door and sought to gain access to him. This was denied to them · by the defendant's wife, who represented that he was not at home. They left, with warnings of a renewal of hostilities in the morning, and this was communicated to the defendant.

By these references to the evidence, we intimate no opin- ion as to any fact in dispute under the evidence. We refer to them only as indicating the state of the record and the im- portance of proper instruction on the question of self-defense.

We are constrained to hold that the instructions did not adequately present this controlling issue in the case, and that the defendant necessarily suffered prejudice thereby.

The judgment below must, accordingly, be reversed.—*Re- versed.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.